1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,       : 21-CR-314 (RJD)
                                :
            Plaintiff,          :
                                : United States Courthouse
        -against-               : Brooklyn, New York
                                :
FLORENCE MUI,                   :
                                : Thursday, July 15, 2021
            Defendant.          : 2:30 p.m.
- - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE RAYMOND J. DEARIE
UNITED STATES DISTRICT SENIOR JUDGE

A P P E A R A N C E S:

For the Government:        JACQUELYN M. KASULIS, ESQ.
                           Acting United States Attorney
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                           BY:  ANDREW ESTES, ESQ.
                                Assistant United States Attorney

For the Defendant:         LAW OFFICES OF JASON BASSETT, P.C.
                           320 CARLETON AVENUE
                           SUITE 4200
                           CENTRAL ISLIP, NEW YORK 11722
                           BY:  JASON BASSETT, ESQ.

Court Reporter:            DAVID R. ROY, RPR
                           225 Cadman Plaza East
                           Brooklyn, New York 11201
                           drroyofcr@gmail.com

Proceedings recorded by Stenographic machine shorthand,
transcript produced by Computer-Assisted Transcription.

```
                    Proceedings                    2
```

1              P  R  O  C  E  E  D  I  N  G  S

2

3                      --ooOoo--

4

5          (In open court.)

6          (Court's Exhibit Number 1 so premarked and

7     received in evidence.)

8          THE COURTROOM DEPUTY:  We are on this afternoon

9     for an arraignment.  This is USA versus Florence Mui --

10         Did I pronounce your name correctly?

11         THE DEFENDANT:  Yes.

12         THE COURTROOM DEPUTY:  Thank you.

13         -- Docket Number 21-CR-314.

14         Can I ask the attorney, please, to note their

15    appearances, beginning with Counsel for Government.

16         MR. ESTES:  Good afternoon.  Andrew Estes for the

17    Government, Your Honor.

18         THE COURT:  Good afternoon.

19         MR. BASSETT:  Good afternoon, Your Honor.

20    Jason Bassett, 320 Carleton Avenue, Suite 4200,

21    Central Islip, New York for Defendant Florence Mui.

22         THE COURT:  Good afternoon, Mr. Bassett, and

23    welcome.

24         Ms. Mui, good afternoon.

25         THE DEFENDANT:  Good afternoon, Your Honor.

```
                         Proceedings                    3
```

1          THE COURT:  I take it you have arrived at a

2     disposition in the case?

3          MR. BASSETT:  Yes, Your Honor.

4          THE COURT:  All right.

5          The defendant will plead to a one-count

6     information?

7          MR. ESTES:  That is correct, Your Honor.

8          THE COURT:  Mr. Bassett?

9          MR. BASSETT:  That is correct, Your Honor.

10          THE COURT:  All right.  Is your client ready to

11     proceed?

12          MR. BASSETT:  She is.

13          THE COURT:  I will ask you to swear the defendant,

14     please.

15          THE COURTROOM DEPUTY:  Certainly.

16     F L O R E N C E   M U I,

17          called as a witness having been first duly

18          sworn/affirmed, was examined and testified as

19          follows:

20          THE COURTROOM DEPUTY:  Thank you.

21          THE COURT:  All right.  Ms. Mui?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Am I pronouncing that correctly?

24          THE DEFENDANT:  That's correct, Your Honor.

25          THE COURT:  As your Counsel I am sure has told

Proceedings                                    4

1   you, I have to ask you a number of questions.  If there is

2   anything that I say that is not entirely clear to you, do

3   not hesitate to say so, all right?  It is important that you

4   understand everything that is being said.

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  If you wish at any time to confer with

7   Mr. Bassett, simply ask me, and I will give you as much time

8   as you need to confer privately with him.

9              THE DEFENDANT:  Thank you, Your Honor.

10             THE COURT:  And you should also understand you are

11  now under oath.  That means that your answers to my

12  questions must be truthful.  If they were not in any

13  material way, you could subject yourself to further criminal

14  charges with the offense of perjury, which is lying under

15  oath.

16             Do you understand that?

17             THE DEFENDANT:  I understand.

18             THE COURT:  Okay.  I am going to ask you to state

19  your full name.

20             THE DEFENDANT:  By name is Florence Mui.

21             THE COURT:  And how old are you?

22             THE DEFENDANT:  I'm 35 years old.

23             THE COURT:  And what formal education have you

24  had?

25             THE DEFENDANT:  I got my Doctorate at

```
                    Proceedings                    5
```

1   St. John's University in Queens, New York.

2            THE COURT:  Are you a Licensed Pharmacist?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  You were born and raised in the

5   states?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  Are you currently under the care of a

8   physician or any medical professional at all?

9            THE DEFENDANT:  I'm sorry?

10            THE COURT:  Are you under the care of a physician

11   or any medical professional?

12            THE DEFENDANT:  I -- like to be paid -- or like

13   a --

14            THE COURT:  I'm sorry.  I cannot -- have you been

15   vaccinated?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  You are at liberty to remove your

18   mask, and that might help us move along.

19            Mr. Bassett, you have no objection to that?

20            MR. BASSETT:  No, none at all, Your Honor.  Thank

21   you.

22            THE COURT:  I had asked you whether you are under

23   anybody's care, a doctor, a physician, a psychiatrist, or

24   anybody?

25            THE DEFENDANT:  I have a nephrologist.

```
                      Proceedings                    6
```

1          THE COURT:  Yes, I understand.

2          All right.  Are you talking -- do you take daily

3     medication?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Does it in any way affect your ability

6     to concentrate?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Okay.  Are you in any sort of

9     discomfort now?

10          THE DEFENDANT:  No.

11          THE COURT:  Had you had sufficient time to

12     consider the decision to enter a plea of guilty?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And are you satisfied with Counsel's

15     representation?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And other than your medication for

18     your kidney issues, have you had any other medication in the

19     last 24 hours?

20          THE DEFENDANT:  No.

21          THE COURT:  Have you ever had a problem with drugs

22     or alcohol?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Counsel, in your discussions with your

25     client, have you at any time had difficulty communicating

Proceedings                                      7

1    with her?

2              MR. BASSETT:  No, Your Honor.

3              THE COURT:  Are you satisfied that she understands

4    the rights she would be waiving by waiving indictment and

5    pleading guilty?

6              THE DEFENDANT:  I am, Your Honor.

7              THE COURT:  And is she, in your judgment, capable

8    of the understanding the nature of these proceedings and

9    competent to proceed?

10             MR. BASSETT:  She is.

11             THE COURT:  Now, Ms. Mui, the first order of

12   business is what we commonly refer to as a Waiver of

13   Indictment.  Under our constitution, the United States

14   Attorney does not have the authority to charge you, or

15   anyone, with a felony violation of law, a felony being any

16   offense that carries with it a possible term of imprisonment

17   in excess of one year; and the crime here, as I understand

18   it, carries with it a possible sentence of five years, so

19   this is a felony violation of law.  So the U.S. Attorney

20   could not charge you with this violation unless you waive

21   your constitutional right to have a grand jury decide

22   whether or not there is probable cause to believe that you

23   have committed this or any other offense.  Okay?

24             The grand jury, like any other jury, is drawn from

25   our community, and the standard of proof before the

Proceedings                                8

1   grand jury is not guilty beyond a reasonable doubt, but

2   whether or not there is probable cause to believe that you

3   have committed the offense.  If 16 of the assembled grand

4   jurors -- and the grand jury, by the way, consists of 23

5   individuals, 16 of whom must be present to constitute a

6   quorum -- if 12 of those present concluded that there was

7   probable cause, then, and only then would they be empowered

8   to charge you with a felony.  If they did not, the

9   U.S. Attorney would be powerless to proceed against you.  He

10  would be able to re-present the matter to a grand jury, to a

11  second grand jury, but he could not charge you with this

12  felony violation of law.

13           Do you understand that?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Now, you can waive your constitutional

16  right, as it appears to be your intension, and then we would

17  proceed just as if the grand jury had indicted you for this

18  offense.

19           Do you follow?

20           THE DEFENDANT:  I understand.

21           THE COURT:  Have you discussed the possibility of

22  a Waiver of Indictment with Mr. Bassett?

23           THE DEFENDANT:  I have.

24           THE COURT:  Do you feel you fully understand your

25  rights to have the matter determined by a grand jury?

Proceedings                                    9

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And are you prepared to waive that

3    right?

4          THE DEFENDANT:  I am.

5          THE COURT:  Any reason why I should not accept the

6    waiver, Mr. Bassett?

7          MR. BASSETT:  No, Your Honor.

8          THE COURT:  Are there any questions you have of

9    me, Ms. Mui, before I accept your waiver?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  All right.  The defendant has in the

12   presence of Counsel and the Court knowingly and voluntarily

13   waived her right to proceed to the grand jury as is

14   indicated on the signed waiver form.

15         Mr. Bassett, did you witness your client's

16   execution of the waiver?

17         MR. BASSETT:  I did.

18         THE COURT:  I, then, enter my signature as the

19   presiding judge.

20         All right.  And as I said moments ago, we now

21   proceed just as if the grand jury had indicted you for this

22   offense.

23         Now, even though it appears that you have come to

24   an understanding with the United States Attorney, I want you

25   to know that as you sit there right now, you have an

Proceedings                                    10

1    absolute right to enter a plea of not guilty.

2           Do you understand that?

3           THE DEFENDANT:  (No verbal response.)

4           THE COURT:  If you were to plead not guilty, under

5    our constitution and laws, you would be entitled to a speedy

6    and public trial by a jury with the assistance of Counsel on

7    the charge reflected on this information.

8           Do you understand that?

9           THE DEFENDANT:  I understand, Your Honor.

10          THE COURT:  At trial, you would be presumed

11   innocent of the charge.  The Government would have to

12   overcome, or try to overcome this presumption of innocence

13   and prove you guilty by competent evidence and beyond a

14   reasonable doubt.  You would not be required to prove a

15   thing.  You could sit back, do nothing, say nothing, simply

16   put the Government to the burden of trying to convince the

17   jury of your guilt.

18          Do you understand that?

19          THE DEFENDANT:  I understand.

20          THE COURT:  That means that if the Government were

21   to fail for any reason, technical or otherwise, the jury

22   would be required under my instructions to find you not

23   guilty, even if you committed this offense.

24          Do you understand?

25          THE DEFENDANT:  I understand, Your Honor.

Proceedings                                         11

1          THE COURT:  Now, in the course of the trial,

2    witnesses for the Government would be required to come here

3    to court and testify under oath in your presence.  You,

4    therefore, have the right to confront each of these

5    witnesses face-to-face here in the courtroom.  You would

6    have the right through Counsel to cross-examine any

7    Government witness, or were it appropriate, to object to

8    evidence offered by the Government.  You would have the

9    right to offer evidence in your own defense, although you

10   would be under no obligation to do so.

11         All right?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  You have the absolute right, and

14   indeed a constitutional right, or a privilege, as we call

15   it, to remain silent; and you cannot be compelled or

16   required by anyone to give testimony against yourself.

17         Do you understand?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And if you decided to avail yourself

20   of this right and remain silent at trial, and if Counsel

21   requested of me, as he likely would, I would instruct the

22   jury in the strongest possible language that they could not

23   in any way hold your decision against you.

24         Do you understand?

25         THE DEFENDANT:  Yes, Your Honor.

1         THE COURT:  At trial you would have the right to

2    compel the attendance of witnesses by the use of Court

3    order, or a *subpoena* as we and commonly refer to it.

4         Do you understand that, as well?

5         THE DEFENDANT:  Yes, Your Honor.

6         THE COURT:  Okay.

7         Now, and finally, the right to testify -- excuse

8    me, the decision whether or not to testify at trial is a

9    decision you make, not Counsel.  It is a decision you make,

10   obviously, one you make in consultation with your attorney,

11   but ultimately it is a decision that you make.

12        Do you understand that?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  Okay.

15        Now, if you plead guilty and I accept your plea,

16   you would be giving up all these rights forever.

17        Do you understand that?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  There would be no trial, with the

20   possible exception of sentence, which I will explain in a

21   minute.  There is no right to appeal.  I will simply enter a

22   judgment of guilty based upon your plea of guilty.

23        Do you understand that?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  And before I can do that, I am

Proceedings                                            13

1   required under the rules to satisfy myself that you are, in

2   fact, guilty of the offense charged in this information.  To

3   do that, in just a couple of minute, I will ask you some

4   questions about the offense.  In responding to my questions,

5   quite obviously, you will give up your right to remain

6   silent.  You will give up your constitutional right not to

7   incriminate yourself, and you will be called upon here in

8   open court this afternoon to acknowledge your guilt.

9              Do you understand that?

10             THE DEFENDANT:  I understand, Your Honor.

11             THE COURT:  Are you willing, then, to give up your

12  right to a trial and these other rights I have just

13  explained?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  All right.

16             Somewhere around here I have a copy of the

17  agreement.  I'm sorry -- oh, here it is.

18             Before we proceed, Ms. Mui, do you have any

19  questions that you would like to put to the Court?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Or to Counsel?

22             THE DEFENDANT:  No.

23             THE COURT:  All right.  I have before me a

24  document that bears the caption of this case.  It is a

25  ten-page typewritten document -- or excuse me, it is an

Proceedings                                    14

1   11-page typewritten document containing 21 enumerated

2   paragraphs.

3              You are familiar with this document, Ms. Mui?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  You would agree, would you not, that

6   this is an important document in terms of your future?

7              THE DEFENDANT:  I would agree.

8              THE COURT:  Fair to say?

9              THE DEFENDANT:  Yes, Your Honor.

10              THE COURT:  Have you read it with that degree of

11   care?

12              THE DEFENDANT:  I have.

13              THE COURT:  Have you reviewed it with Counsel?

14              THE DEFENDANT:  I have, Your Honor.

15              THE COURT:  All right.  And has he answered,

16   Ms. Mui, any questions you might have about anything in this

17   document?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Do you have any questions that you

20   would like to put to me about anything in the document,

21   Ms. Mui?

22              THE DEFENDANT:  No, Your Honor.

23              THE COURT:  As far as you understand, Ms. Mui, is

24   your agreement with the United States Attorney fully and

25   accurately set out in this Court --

Proceedings                              15

1          Have we marked it, Ellie, as a court exhibit?

2          THE COURTROOM DEPUTY:  Yes, Your Honor,

3    Court Exhibit 1.

4          THE COURT:  -- Court Exhibit 1; is it fully and

5    accurately set forth in there?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Are there any other promises or

8    assurances that you have received that have contributed to

9    your decision to offer a plea of guilty --

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  -- that are not written down here?

12         THE DEFENDANT:  No, Your Honor.

13         THE COURT:  Counsel, you can confirm that?

14         MR. BASSETT:  Yes, Your Honor, I can confirm.

15         THE COURT:  All right.

16         Let me turn my attention to the charge itself.

17   There are a number of introductory paragraphs.

18         With Counsel's permission, I will dispense with

19   reading the introductory paragraphs.

20         MR. BASSETT:  Yes, Your Honor.

21         THE COURT:  And turn my attention to the charging

22   languages that appears first on Page 4, Paragraph 14, Quote,

23   "The allegations contained in Paragraphs 1 through 13 are

24   re-alleged and incorporated as if fully set forth in this

25   paragraph.

Proceedings                                    16

1          "In or about and between December 2012 and October

2    of 2020, both dates being proximate and inclusive, within

3    the Eastern District of New York, and elsewhere, the

4    Defendant Florence Mui, together with others, did knowingly

5    and willfully conspire to offer and take kickbacks, directly

6    and indirectly, overtly and covertly, in cash and in kind,

7    to persons to induce such persons to purchase, lease, order

8    and to arrange for and recommend purchasing, leasing and

9    ordering services and items for which payment may have been

10   made in whole and in part under Medicare and Medicaid,

11   contrary to *Title 42, United States Code,*

12   *Section 1320(a)*..., et cetera.

13          "In furtherance of the conspiracy and to effect

14   its objective..." -- the information alleges -- "...within

15   the Eastern District of New York, and elsewhere, the

16   Defendant Florence Mui, together with others, committed and

17   caused the commission of, among others, at least one of the

18   following:

19          "Overt Acts:  On or about February 10, 2020, Mui

20   and Co-Conspirator 1 exchanged text messages in which they

21   discussed, in substance and in part, cataloging the

22   supermarket gift certificate at Pharmacy 1.

23          "On or about April 8, 2020, Mui and

24   Co-Conspirator 1 exchanged text messages in which Mui

25   informed Co-Conspirator 1, in substance and in part, that

Proceedings                                    17

1    Pharmacy 1 was so busy that they ran out of gift

2    certificates for Company 1."  Et cetera, et cetera.

3              And there are any number of overt acts listed, but

4    the ones I have just read are the ones that name you

5    specifically.

6              Okay.  Now, do you understand what you are charged

7    with, Ms. Mui?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  You are charged with the crime of

10   conspiracy.

11             What is your understanding of the nature of

12   conspiracy; what is a conspiracy?

13             THE DEFENDANT:  Having a -- any type of act that

14   is...

15             THE COURT:  Let help you out.  A conspiracy is an

16   illegal agreement, okay?  In this case, the agreement to do

17   this, to provide these kickbacks is in and of itself a

18   crime, whether you do any kickback or not, provided that

19   there is some act committed in furtherance of that

20   agreement, often called "overt act."  So once you have an

21   agreement, a meeting of the minds with somebody else, and

22   you intend to do what you are agreeing to do and you take

23   some act, it could be a totally innocent act, all right, in

24   furtherance of that agreement, the crime of conspiracy is

25   complete.

Proceedings                                              18

1           Do you understand?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  That is the offense charged in this

4    information, okay?

5           All right.  Now, let me turn back to your

6    agreement and discuss, obviously, important information

7    related to sentencing.

8           And before I do, let me just ask:  Do you have any

9    questions about anything we have covered so far?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Okay.  Our discussion of sentencing

12   really comes in three parts:

13          The first part is the penalties that the Congress

14   of the United States has written into the law, okay, and we

15   see them in Paragraph 1 of your agreement.  For a

16   conspiracy, the maximum term of imprisonment, in other

17   words, the worst case is five years in prison.  There is no

18   minimum.  There is a period of supervised release of up to

19   three years.

20          Now, supervised release comes into play if you are

21   sentenced to a period of incarceration.  The moment you are

22   released from federal custody, begins the period of

23   supervised release.  If during that period of supervised

24   release you violated the conditions of your supervised

25   release, you could them be returned to prison for my

Proceedings                                    19

1    sentence in this case for up to two years without any credit

2    being given to you for the time you have spent out of jail

3    under supervision.

4             Do you follow that?

5             THE DEFENDANT:  Yes, Your Honor.

6             THE COURT:  Okay.  Well, then, you have been well

7    prepared, because that is not easy.

8             The statute also provides for a fine of up to

9    $250,000, or twice the gross gain; mandatory restitution

10   according to your agreement in the amount of $2.9 million; a

11   special assessment of $100 will be part of the sentence; and

12   criminal forfeiture is also an aspect of the sentence, as is

13   set forth in Paragraphs 6 through 13 of your agreement with

14   the Government.

15            Do you understand?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  Now, those are the penalties that the

18   Congress has written into the law.

19            Now we move to Step 2.  We have what is called

20   sentencing guidelines that assist the Court to determine

21   where in this wide range of zero to five years you should be

22   sentenced, and it takes into account all sorts of

23   considerations:  The offense itself, your role in it, among

24   other things.

25            The Government -- I guess the Government has not

Proceedings                                        20

1   provided in this agreement, but has Counsel given you some

2   idea as to how you might fair under these guidelines?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  The guidelines are not binding on

5   the Court.  I am, however, required to consider them as an

6   important first step in deciding upon a reasonable sentence.

7              And that, then, gets us to the third and final

8   step of sentencing.  What the law ultimately requires of me

9   is that I consider the guidelines; I consider any

10  information that Counsel brings to me, both by statute or

11  otherwise, okay; anything bearing on what may be the

12  appropriate sentence, okay; and then impose what the law

13  regards --

14              -- are you okay?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  -- what the law regards as a

17  reasonable sentence.

18              If at the end of the day you feel that I have

19  imposed an unreasonable sentence and to the extent that your

20  agreement with the Government permits it, you may seek

21  review in a higher court of the sentence imposed.

22              Are you okay?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  I just need you to be able to

25  concentrate on what I am saying.  We can always take a

1   break.

2            THE DEFENDANT:  I'm okay, Your Honor.

3            THE COURT:  So that is the sentence routine.

4   First the statutory penalties, then consideration of the

5   guidelines, and then ultimately consideration of both the

6   statutory factors, as well as any other information Counsel

7   bring to my attention.  Okay?

8            Any questions about sentencing?

9            THE DEFENDANT:  No, Your Honor.

10            THE COURT:  Or anything else we have covered so

11   far?

12            THE DEFENDANT:  No.

13            THE COURT:  Are you ready to plead?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  What is your plea to the information,

16   guilty or not guilty?

17            THE DEFENDANT:  Guilty, Your Honor.

18            THE COURT:  Are you pleading guilty based upon

19   your own decision, your own will?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  You have decided with Counsel this is

22   what is in your best interest?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  Has anybody given you any assurances

25   that contributed to your decision to plead guilty that I

Proceedings                                    22

1    have not been told about or that are not reflected in the

2    agreement?

3            THE DEFENDANT:  No, Your Honor.

4            THE COURT:  Has anybody given you any assurances

5    as to what I will do when it comes to sentence?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  All right.

8            And by the way, speaking of sentence, I need to go

9    back.  I need to address one aspect of your sentence that I

10   should have touched on earlier in your agreement.

11           Paragraph 15 of your agreement, this provision --

12   and I am not touching on everything in the agreement, quite

13   obviously, because you have assured me you have reviewed it

14   carefully with Counsel -- but Paragraph 15 deals with the

15   possibility that at some time before sentencing, the

16   Government might make an application to the Court

17   authorizing me to sentence you without regard to the

18   sentencing guidelines.  Okay?

19           A couple of things I need you to understand:

20   Whether that motion is made is entirely a matter for the

21   Government.  Okay?  I have no play in that decision, absent

22   unusual circumstances.  It is entirely the Government's

23   decision.  So you are essentially banking on the Government

24   acting fairly and reasonably in terms of evaluating your

25   assistance.

Proceedings                        23

1          Do you understand?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  If the Government makes the

4     application, it does not require me to do anything.  It

5     simply gives me authority.

6          Follow?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Okay.

9          All right, well, I have gotten ahead of myself, so

10    we will get back to where I should have been, which is you

11    have assured me, you pled guilty and you are doing so

12    voluntarily and of your own free will.

13          Tell me what you did to violate this law.

14          THE DEFENDANT:  Okay.  From approximately

15    December 2012 to October 2020, I was employed as supervising

16    pharmacist --

17          THE COURT:  Oops.  A little more slowly.

18          THE DEFENDANT:  I'm sorry.

19          THE COURT:  I want to make sure that I get every

20    word.

21          THE DEFENDANT:  From approximately December 2012

22    October 2020, I was employed as supervising pharmacist at a

23    pharmacy located in Brooklyn, New York and also occasionally

24    worked as a pharmacist at another related pharmacy also

25    located in Brooklyn, New York.

Proceedings                                    24

1          During this time, I, along with others,

2    participated in a conspiracy to defraud the Medicare and

3    Medicaid programs.  This conspiracy involved providing

4    kickbacks in the form of either cash, or what we refer to as

5    "coupons," which were gift certificates to local

6    supermarkets.  Either cash or these coupons were given to

7    customers who were recipients of prescription benefits under

8    the Medicare and Medicaid programs in exchange for these

9    customers filling their prescriptions at the pharmacies of

10   which I was employed.

11          THE COURT:  When I first read that, Mr. Estes, I

12   said to myself, when I first read it, Where is the crime?  I

13   realize a kickback to somebody who ordinarily who had

14   ordered their drugs from the pharmacy is undoubtedly a

15   violation of federal law.

16          But how does it differ from a typical promotion?

17   I am just curious.  In other words, if you open a bank

18   account with me, I will give you an iron, all right?  I

19   realize we are dealing with two different disciplines here.

20   But I just want to understand, paying a kickback to a

21   recipient of Medicaid for the purpose of inducing that

22   recipient to provide business to you is a clear violation of

23   federal law?

24          Is that the point?

25          MR. ESTES:  Yes, Your Honor.  As far as the

Proceedings                          25

1    Medicaid and Medicaid or other healthcare program kickbacks,

2    that those payments, in whole or in part, for those services

3    or items that are being paid for by federally funded

4    dollars, that that, essential, corrupts that system.  And so

5    making those payments, whether it's cash, whether it's gift

6    certificates, or other benefits is a crime under those

7    circumstances.

8              THE COURT:  Let me just take you through it, okay?

9    I have to get my monthly supply of XYZ prescription

10   medicine, and I go to this pharmacy and I pay whatever I

11   have to pay.  Medicare or Medicaid is billed for that drug

12   in that amount at a set price, is it not?

13             MR. ESTES:  Generally, yes, it's set.  Medicare or

14   Medicaid is scheduled with, of course, certain exceptions

15   and details, Your Honor.

16             THE COURT:  I see.

17             So if I decide, then, as the pharmacist to give

18   back my customer a kickback -- kickback is a dirty word, so

19   when you hear it, alarm bells go off for the Court.  But if

20   I decide to give them a gratuity for doing business with me

21   or a discount because they are a steady customer, and

22   Medicaid doesn't pay any more than they would ordinarily pay

23   for an entirely legitimate transaction, that would still be

24   a violation?

25             MR. ESTES:  Yes, Your Honor.  In terms of there's

1    no requirement or issue with medical necessity, for example,

2    that that's a separate, among many statutes such as the

3    fraud provision, like a criminalized act, regardless of

4    whether the prescription itself was lawfully provided or

5    medically necessary, paying someone to induce them to go to

6    you to fill their prescription or provide a similar service,

7    generally does violate the antikickback statute, unless

8    there's some exception to that.  But that is the general

9    rule and principle of the federal antikickback statute in

10   the healthcare program context.

11            THE COURT:  Well, keep in mind I am looking

12   forward to being educated a little bit more thoroughly

13   between now and then; but I generally understand, but I want

14   to be sure.

15            Any further questions from Counsel before we

16   conclude?

17            MR. BASSETT:  No, Your Honor.

18            THE COURT:  Ms. Mui, any questions that you would

19   like to put to the Court?

20            THE DEFENDANT:  No, Your Honor.

21            THE COURT:  All right.  Based on the information

22   given to me, I find that the defendant is acting

23   voluntarily; that she fully understands her rights, the

24   consequences, and possible consequence of her plea; and that

25   there is a factual basis for the plea of guilty.  I,

Proceedings                                    27

1    therefore, accept her plea of guilty to the one-count

2    information bearing Docket Number 21-CR-314.

3            I urge you to cooperate at the appropriate time

4    with the probation department in their preparation of the

5    presentence report, consistent, of course, with the advice

6    of Counsel.

7            We have a control date for Counsels' benefit of

8    January 21, 2022.

9            And unless I am forgetting something, that

10   probably does it -- oh, no, see, now I am forgetting

11   something.

12           (Pause in proceedings.)

13           THE COURTROOM DEPUTY:  (Indicating.)

14           THE COURT:  No, I do not think so.

15           THE COURTROOM DEPUTY:  Okay.

16           THE COURT:  Okay.  There may be a motion on the

17   books technically to relate the case?

18           Counsel, are you aware of the case being related?

19           MR. BASSETT:  I am, Your Honor.

20           THE COURT:  It has already been implemented, but

21   if the motion is still carried on the books, I will direct

22   the Court, of course, to remove it.

23           Anything further, Mr. Estes?

24           THE COURTROOM DEPUTY:  Oh, Judge Dearie, I believe

25   the parties have come to an agreement on bail.

```
                W. Name - direct/cross - Atty              28
```

1           THE COURT:  Okay.  Pretrial Services waiting

2    patiently has signed off on this, and I have your report.

3    $500,000 unsecured to be co-signed by her husband, with the

4    conditions as usual: to report to Pretrial Services as

5    directed; travel is restricted to Eastern and Southern

6    Districts of the New York; surrender all passport to

7    Pretrial --

8           Do you have them?  Melissa, do you have the

9    passports?

10          MS. ROMAN:  We will take them from her.

11          THE COURTROOM DEPUTY:  Okay.

12          THE COURT:  -- and not to apply to any additional

13   travel documents; and you will be subject to random home,

14   employment contacts by Pretrial Services.

15          Ms. Mui, are you working at the moment?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  All right, then, folks, I will sign

18   the bond -- has she signed it?

19          (Pause in proceedings.)

20          THE COURT:  Okay.  When you are ready, I will sign

21   it.

22          Otherwise, thank you, folks.  We will see you next

23   time.

24          (Matter concluded.)

25                       --ooOoo--